UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KENDRICK D. HALL (#412878)                          CIVIL ACTION

VERSUS

TYRONE JOHNSON, ET AL.                              NO.: 12-00099-BAJ-RLB

RULING

This matter comes before the Court on the Defendants' Motion for Partial Summary Judgment. (Doc. 10.) This motion is opposed.

The pro se Plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Sgt. Tyrone Johnson ("Johnson") and Major Thomas Wayne Bellue ("Bellue"), alleging that the Defendants violated his constitutional rights on September 16 and 17, 2011, when Bellue allegedly allowed Johnson to work in the same area as the Plaintiff, notwithstanding the purported existence of a "memorandum" stating that Johnson was not supposed to "be around" the Plaintiff. According to the Plaintiff, Johnson then subjected the Plaintiff to retaliation, to verbal threats, and sexual harassment, to physical assault, and deprived the Plaintiff of sleep, water, ventilation, and medical care.

The Defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of excerpts from the Plaintiff's medical records, and an Investigative Report dated October 11, 2011, prepared by Lt. Col. Eli Wilson.[1]

---

[1]The referenced Investigative Report is not properly before the Court. It is a hearsay document which does not qualify as a business record and has not been submitted in the form of an affidavit prepared by the investigative officer. "To be considered by the court, 'documents must be authenticated by and attached to

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Supporting affidavits must set forth facts which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. <u>Anderson</u>, <u>supra</u>. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex</u>, <u>supra</u>.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. <u>Little</u>, <u>supra</u>, 37 F.3d at 1076. In resolving a motion for summary

---

an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'. . . A document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment." <u>Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.</u>, 896 F.2d 1542 (9th Cir. 1989). See also <u>Martin v. John W. Stone Oil Distributor, Inc.</u>, 819 F.2d 547 (5th Cir. 1987) ("Unsworn documents are . . . not appropriate for consideration [on motion for summary judgment]"); <u>Moffett v. Jones County</u>, 2009 WL 1515119 (S.D. Miss., June 1, 2009) ("The records are not certified . . . nor sworn in any way, thus they are inadmissible"); <u>Rizzuto v. Allstate Ins. Co.</u>, 2009 WL 1158677 (E.D. La., April 27, 2009) (same); 10A Charles Alan Wright, et al., <u>Federal Practice & Procedure</u> § 2722 (3rd ed. 1998).

judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

Upon a review of the Plaintiff's Complaint, it appears that the factual allegations contained therein are lacking in detail and specificity.[2] Interpreting these allegations liberally, however, and by reference to the Plaintiff's opposition filed in response to the Defendants' motion for partial summary judgment,[3] the Plaintiff's Complaint may be interpreted as alleging that on September 16 and 17, 2011, the Plaintiff advised Bellue that there was a memorandum stating that Johnson should not be allowed to work in the same area as the Plaintiff. Notwithstanding, Bellue took no action to remove Johnson from the area. As a result, during the course of Johnson's night shift duties on the referenced dates, Johnson subjected the Plaintiff to verbal threats and physical harassment and deprived the Plaintiff of sleep, water, ventilation, and an opportunity to shower. Specifically, Johnson "kept slamming [the Plaintiff's] door", "kept [the Plaintiff's] cell light on all night," threatened the Plaintiff with physical injury and sexual assault, and "throwed water, bleach, soap, urine [and] bars of soap" into the Plaintiff's cell, causing the Plaintiff

---

[2]The entirety of the plaintiff's factual statement is as follows:

> On dates of incident 9-16-11, 9-17-11, Major Bellue allowed Sgt. Tyrone Johnson ... to work around me when there was a memorandum for Sgt. Tyrone Johnson not to be around me. Sgt. Tyrone Johnson then retaliated on me and inflicted cruel and unusual punishments on me for the two days of 9-16-11, 9-17-11, where he cause me mental and physical injuries, pains and suffering, where he sexual assault[ed], sexual harassed, deprived me of sleep, water supply, ventilation, hygiene, mental and medical care and retaliated on me, and Major Bellue was advised of this but still have refused to move Sgt. Tyrone Johnson.

[3]See Docs. 20 and 23. In the context of lawsuits filed by pro se petitioners, the Court is entitled to consider subsequent pleadings filed by the petitioners as amendments or supplements to the allegations of the Complaint. See Howard v. King, 707 F.2d 215 (5th Cir. 1983).

3

to sustain a fall. When the Plaintiff thereafter requested medical attention, the request was allegedly refused by Johnson. The Plaintiff further asserts that the conduct of both Bellue and Johnson was motivated by retaliatory animus.

In response to the Plaintiff's allegations, the Defendants first seek dismissal of the Plaintiff's claim for monetary damages asserted against them in their official capacities.[4] In this regard, the Defendants correctly point out that § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities, which officials are not seen to be "persons" under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Further, in Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. Id. Accordingly, the Plaintiff's claim for monetary damages asserted against the Defendants in their official capacities is subject to dismissal.

In contrast, the Plaintiff's claim for monetary damages asserted against the Defendants in their individual capacities remains viable because a claim against a state official in the official's individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Hafer v. Melo, supra. Thus, a showing by the Plaintiff that the Defendants, acting individually and under

---

[4] The plaintiff's Complaint is not clear as to whether he intended to name the Defendants in their individual and/or their official capacities. Notwithstanding, the Plaintiff makes clear in subsequent pleadings that he intended to name the Defendants in both capacities. See, e.g., Doc. 23.

4

color of state law, intentionally caused the deprivation of the Plaintiff's federal rights, would be enough to establish personal liability under § 1983. Id.

Turning to the Plaintiff's claims asserted against the Defendants in their individual capacities, the Defendants contend that they are entitled to qualified immunity in connection with the Plaintiff's claims. Specifically, the Defendants contend that there is insufficient evidence to support a finding that they violated any of the Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the Plaintiff, the Defendants' conduct violated the Plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id.[5]

Undertaking the qualified immunity analysis with respect to the Plaintiff's claims, the Court finds that the Defendants' motion should be granted and that the Plaintiff's allegations and evidentiary showing fail to overcome the assertion of qualified immunity.

---

[5]The United States Supreme Court has held that rigid chronological adherence to the Saucier two-step methodology is not mandatory. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

First, with regard to the Plaintiff's claim asserted against Bellue, that he failed to protect the Plaintiff from harm at the hands of Johnson, the Court finds that the Plaintiff's allegations and evidentiary showing are insufficient to state a claim relative to this cause of action.

In this regard, a prisoner has a constitutional right under the Eighth Amendment to be sheltered from a constant threat of harm or violence within the prison environment. See, e.g., Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981); Johnston v. Lucas, 786 F.2d 1254 (5th Cir. 1986). Notwithstanding, in order for there to be liability in connection with this cause of action, there must have existed an intent on the part of the defendant to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm. Johnston v. Lucas, supra. "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Specifically, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

The Plaintiff in the instant case has failed to provide sufficient facts to support his claim that Bellue was deliberately indifferent to a perceived risk of substantial harm to the Plaintiff's safety. In his pleadings, the Plaintiff has offered nothing more than an unsworn assertion that there exists or existed a memorandum stating that Johnson was not supposed to work in the same area as the Plaintiff. The Plaintiff, however, has not presented the Court with a copy of the referenced memorandum and, more importantly, he does not assert that he exhibited a copy of the memorandum to Bellue when requesting

that Johnson be removed from the Plaintiff's housing unit. All that the Plaintiff states in his Complaint is that Bellue "allowed" Johnson to work in the proximity of the Plaintiff, notwithstanding the existence of a purported memorandum "for Sgt. Tyrone Johnson not to be around [him]."

Further, in the Plaintiff's administrative grievance filed relative to this incident, the Plaintiff states merely that Johnson was "somehow put to work" in proximity to the Plaintiff, suggesting only a claim of negligence which is not actionable under § 1983. Oliver v. Collins, 904 F.2d 278 (5th Cir. 1990); Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987). In addition, the referenced grievance makes no reference whatever to any wrongdoing by Bellue and includes no indication that the Plaintiff informed security personnel of the supposed danger presented by Johnson. To the contrary, the Plaintiff states in his grievance, in contrast to his assertion in the Complaint, that he "didn't report" any of the alleged wrongful conduct of Johnson.[6] Thus, the Plaintiff's allegations do not support a finding that Bellue was aware of and disregarded a perceived risk of serious harm to the Plaintiff.

Finally, even if the Plaintiff did inform Bellue of the supposed existence of the purported memorandum, the Court is not persuaded that a correctional officer may be found to be deliberately indifferent merely because he disregards an unsupported bare-bones statement by an inmate that a danger is presented by the presence of another

---

[6]It thus appears that the Plaintiff's grievance failed to provide fair notice to prison officials that the Plaintiff was making a claim therein that Bellue had failed to protect him from harm at the hands of Johnson. Accordingly, this claim is subject to dismissal as having not been administratively exhausted as mandated by 42 U.S.C. § 1997e. See Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) (holding that one of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "time and opportunity to address complaints internally").

officer.[7]  Accordingly, the Court finds that Bellue is entitled to summary judgment in connection with the Plaintiff's claims.

Turning to the Plaintiff's claims asserted against Johnson, the Plaintiff complains of verbal threats and harassment, of physical harassing behavior, and of deprivations to which he was allegedly subjected to by Johnson.  Specifically, by reference to the Plaintiff's opposition to the Defendants' motion for partial summary judgment, the Plaintiff asserts that Johnson threatened to cut the Plaintiff with a knife, to hang the Plaintiff with a sheet, to poison the Plaintiff's food, to plant contraband in the Plaintiff's cell, to charge the Plaintiff with false disciplinary reports, and to subject the Plaintiff to sexual assaults or allow one or more other inmates to do so.  In addition, Johnson allegedly threw substances into the Plaintiff's cell, subjected the Plaintiff to loud noises and bright lighting, refused the Plaintiff's requests for a shower and for medical attention, and turned off the ventilation and water access in the Plaintiff's cell.  Finally, the Plaintiff asserts that these actions were undertaken in retaliation for unstated conduct by the Plaintiff.

With regard to the Plaintiff's assertions regarding mere verbal threats and harassment, this claim is not one of constitutional dimension.  The law is clear that allegations of threats and verbal abuse alone do not present a claim under § 1983.  Specifically, it has repeatedly been held that "[m]ere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." McFadden

---

[7]The Court is skeptical regarding the existence of the purported memorandum and of the Plaintiff's additional contention that Johnson was placed on the Plaintiff's enemy list. Whereas the Court is aware that co-inmates may be placed on each other's so-called enemy lists when prior conflict, threats or other factors warrant a conclusion that the inmates may present a potential danger to each other, the Court is not aware of security officers being placed on inmates' enemy lists and would be surprised if such had occurred in the instant case. The mere fact that an inmate and security officer may have had prior conflict, that the officer may have previously charged the inmate with disciplinary violations, or that the inmate may have accused the officer of prior wrongdoing would not normally result in a formal determination by prison personnel that the inmate and security officer should be separated from each other.

8

v. Lucas, 713 F.2d 143 (5th Cir.), cert. denied, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983); Burnette v. Phelps, 621 F.Supp. 1157 (M.D. La. 1985); Johnson v. Glick, 481 F.2d 1028 (2nd Cir. 1973). The Plaintiff's allegation that Johnson subjected the Plaintiff to verbal threats and harassment, therefore, even if the threats were of proposed violent or sexually assaultive behavior, does not rise to the level of a constitutional violation and must be dismissed.

The Plaintiff also complains that Johnson, over the course of the two-day period addressed in the Complaint, threw substances into the Plaintiff's cell, subjected the Plaintiff to certain deprivations, and created an environment not conducive to sleep or mental health. Specifically, the Plaintiff asserts that Johnson threw "water, bleach, soap, urine [and] bars of soap" into the Plaintiff's cell, deprived the Plaintiff of adequate ventilation, water, and an opportunity to shower, and repeatedly slammed the Plaintiff's cell door and kept the Plaintiff's cell light on all night. When the Plaintiff requested medical attention, such attention was allegedly denied. The Plaintiff further alleges that, as a result of the liquids thrown into his cell, he sustained burning to his eyes and sustained a fall in his cell, causing him to hit his "face, head and other body parts on the bar[s]" of the cell.

The Plaintiff's allegations implicate his right, under the Eighth Amendment to the United States Constitution, to be free from exposure to cruel and unusual conditions of confinement, to excessive force, and to deliberate indifference to serious medical needs. With regard to the claim of unconstitutional conditions of confinement, however, it is well-settled that the Eighth Amendment "does not mandate comfortable prisons". Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Rather, it imposes upon prison officials only minimal requirements in the treatment and facilities which they provide

to prisoners. Farmer v. Brennan, supra. While prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." Harris v. Angelina County, Texas, 31 F.3d 331 (5th Cir. 1994), citing Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Second, under a subjective standard, the Court must determine whether the prison official responsible for the deprivation was "'deliberately indifferent' to inmate health or safety". Farmer v. Brennan, supra. Specifically, the official must have both been aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and the official must also have drawn the inference. Id. The deliberate indifference standard is appropriately applied to the Plaintiff's allegations regarding the conditions of his confinement. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995); Wilson v. Seiter, supra.

With regard to the Plaintiff's claim of excessive force, force is excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010), quoting Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Not every malevolent action by a prison guard, however, gives rise to a federal cause of action, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that such force is not of a sort "repugnant to the conscience of

mankind." Hudson v. McMillian, supra. Although the absence of injury does not end the inquiry – because an inmate who is gratuitously subjected to excessive force by correctional officers "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury" Wilkins v. Gaddy, supra – "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation," and "may also provide some indication of the amount of force applied." Id.

Finally, in order for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation which he believes he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001). Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm. Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

In the instant case, the Court finds that the Plaintiff has failed to show that his constitutional rights have been violated by the Defendants' actions. The Plaintiff alleges that, over the course of a two-day period, Johnson engaged in conduct which, if true, likely caused discomfort and inconvenience to the Plaintiff, but the Court concludes that such conduct was not so serious or of such duration as to rise to the level of a viable claim of exposure to unconstitutional conditions, of excessive force, or of deliberate medical indifference.

The mere fact that the Plaintiff may have been subjected to loud noises, bright lighting, denial of an opportunity to shower, an absence of ventilation, a denial of hygienic supplies, and/or an active water supply during only the night shifts covering a two-day period is not so terrible as to warrant a conclusion that the Plaintiff was denied a basic human need. In the first place, he does not assert that he sustained any physical injury as a result of these deprivations, and under 42 U.S.C. § 1997e(e), the Plaintiff may not recover compensatory damages in the absence of a showing of a physical injury. See Alexander v. Tippah County, Mississippi, 351 F.3d 626 (5th Cir. 2003), cert. denied, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004).

Moreover, the Plaintiff does not allege that the referenced deprivations continued beyond the two-day period alleged in the Complaint, or even persisted during the intervening day-shifts on the dates in question. The short-lived duration of the referenced deprivations leads to the conclusion that the Plaintiff's constitutional rights were not violated by the relatively transient conditions to which he was subjected. See id. (recognizing that the length of time spent in offensive conditions must be taken into account and that onerous conditions which would be "intolerably cruel for weeks or

months" may be "tolerable for a few days"). Accordingly, absent allegations of deprivations greater than mere discomfort or inconvenience, which deprivations did not cause physical injury, the Plaintiff has failed to state a claim of constitutional dimension relative to the conditions to which he was allegedly subjected.

Turning to the Plaintiff's claims of excessive force and deliberate medical indifference, the Court concludes that those claims are simply not supported by the record before the Court. The Fifth Circuit has held that were the objective factors of an inmate's medical records show no evidence of any injuries consistent with the inmate's allegations, the Court may conclude that the allegations are implausible. See Wilburn v. Shane, 193 F.3d 517 (5th Cir. 1999), citing Wesson v. Oglesby, 910 F.2d 278 (5th Cir. 1990).

According to the Plaintiff's medical records, the Plaintiff sought and received medical attention for generalized complaints of head and neck pain on several occasions prior to the incidents complained of in this proceeding, notably on September 2, 4 and 15, 2011. In fact, on September 15, 2011, the day before these alleged incidents, he was seen by a physician regarding multiple complaints, including complaints of head and neck pain, and the physician's impression at that time was that the Plaintiff was suffering from tension headaches. The physician referred the Plaintiff for cervical spine x-rays and also for a consultation with the LSP Eye Clinic, noting that the Plaintiff was suffering with impaired vision.

Two days later, on the morning of September 17, 2011, during the time that the alleged harassment and abuse were occurring, the Plaintiff requested and received medical attention from a medical technician during routine sick-call, complaining at that time of headaches, weakness in his left arm, numbness in both legs, and pain in his back,

neck, stomach and legs. The Plaintiff's written medical request, however, contains no reference whatsoever to any alleged abuse or wrongdoing by Johnson, to a fall allegedly sustained by the Plaintiff in his cell, or to any liquids or substances thrown into the Plaintiff's cell by Johnson. The written notes of the medical technician, generated during this consultation, similarly reflect that the Plaintiff made no verbal complaints of this nature to the technician. Finally, this record indicates that the Plaintiff's physical examination was unremarkable at that time and that he was in no acute distress. Accordingly, the medical technician prescribed no medication, noted that the Plaintiff had an upcoming appointment scheduled with a physician, and advised the Plaintiff to seek further attention only as needed.

The next indication of a request for medical attention by the Plaintiff occurred on September 18, 2011, the day after the events complained of, at which time the Plaintiff reported himself to be a suicide risk. The Plaintiff was evaluated by a social worker on that date, but again, there is no indication in the resulting medical record that the Plaintiff made any report of abuse or wrongdoing by Johnson or any other correctional officer. Instead, the social worker noted that the Plaintiff was non-specific when questioned whether "anything in particular" had happened to cause his feelings of self-harm, and noted that the Plaintiff "answered several times that he was having family problems that are causing him daily stress and anxiety." There is no indication that the Plaintiff sought any further medical attention during the ensuing week for injuries allegedly sustained on September 16 and 17, 2011, or that he was prevented from doing so by Johnson or any other correctional officer.[8]

---

[8]On September 27, 2011, more than a week after the incidents complained of, the Plaintiff was escorted to the LSP physicians' clinic and complained at that time of having suffered a slip and fall in his cell on September 16, 2011. This visit, however, was apparently the result of the investigation conducted by prison officials into the Plaintiff's complaints and was not the result of an independent request for medical attention.

In short, there is nothing in the Plaintiff's medical records to suggest that he was subjected to excessive force, was denied medical attention, or sustained any injury whatsoever as a result of physical abuse allegedly inflicted by Johnson on September 16 and 17, 2011. Specifically, no complaints were made by the Plaintiff regarding such abuse at the time, the Plaintiff was, in fact, able to obtain medical attention on September 17 and 18, 2011, which belies his assertion that he was denied medical care,[9] and the pertinent medical records provide no indication of either the alleged abuse or of any injury sustained as a result thereof. On this showing, the Court is unable to conclude that a reasonable fact finder could find in favor of the Plaintiff in connection with this claim. Thus, the Defendants' motion for summary judgment should be granted in connection with this issue

Finally, the Plaintiff asserts that the actions of the Defendants were motivated by retaliatory animus in response to the Plaintiff having informed them "of the situation". In this regard, the law is clear that the taking of action against an inmate because of the inmate's exercise of his First Amendment right to complain to supervisory officials about the alleged wrongful conduct of prison security officers may be a violation of the inmate's constitutional rights. Ruiz v. Estelle, 679 F.2d 1115 (5th Cir.), opinion amended in part and vacated in part, 688 F.2d 266 (1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); Gibbs v. King, 779 F.2d 1040 (5th Cir.), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986).

---

[9]The Court also notes that the Plaintiff's administrative grievance makes no reference to any denial of medical attention by Johnson but in fact acknowledges that the Plaintiff was evaluated by a medical technician on September 17, 2011. Accordingly, it appears that the Plaintiff has failed to exhaust administrative remedies regarding his claim that Johnson was deliberately indifferent to his medical needs.

However, inasmuch as claims of retaliation are not favored, it is the Plaintiff's burden to provide more than mere conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must . . . be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate. . . . The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

Woods v. Smith, supra, 60 F.3d. at 1166. Further, in order to prevail on a claim of retaliation, an inmate "must allege the violation of a specific constitutional right," the exercise of which right resulted in the retaliatory conduct. Id. See also Tighe v. Wall, 100 F.3d 41 (5th Cir. 1996) (dismissing an inmate's claim of retaliation because he failed to demonstrate the exercise of a specific constitutional right).

Applying this standard in the instant case, the Court concludes that the Plaintiff has failed to sufficiently allege or support a claim of retaliation relative to the alleged incidents. Specifically, the Plaintiff provides no more than a conclusory assertion that he believes that the Defendants' actions were motivated by retaliatory animus, and he fails to identify the constitutional right which supposedly led to the retaliatory conduct. Accordingly, on the record before the Court, it does not appear that the Plaintiff has adequately stated a claim that the actions of the Defendants were motivated by retaliatory animus and, for this reason, the Defendants' motion for summary judgment should be granted in connection with this issue.

Although the Plaintiff seeks to invoke the supplemental jurisdiction of this court, a District Court may decline the exercise of supplemental jurisdiction over a Plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the District Court has original

jurisdiction, if the District Court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.

In the instant case, having recommended that the Plaintiff's federal claims be dismissed, the Court concludes that it is appropriate for the Court to decline the exercise of supplemental jurisdiction over the Plaintiff's state law claims.

Accordingly,

**IT IS ORDERED** that the **Defendants' Motion for Partial Summary Judgment (Doc. 10)** is **GRANTED**.  Plaintiff's federal claims are hereby **DISMISSED**, with prejudice.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claims.

Thus,

**IT IS FURTHER ORDERED** that this matter is hereby **DISMISSED**, with prejudice.  Judgment shall be entered accordingly.

Baton Rouge, Louisiana, this 6th day of March, 2013.

*[signature]*

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**